Case number 21-3057, United States of America v. Clark Calloway, Jr. Appellant. Ms. Dormina for the appellant, Ms. Kelly for the appellate. Good morning, everybody. Dormina, you can begin. Can you help me now? I'm so sorry. Absolutely. Good first try. Thank you. I apologize. No problem. May it please the court. Good morning. Rosanna Terrimina from the Federal Public Defender's Office on behalf of Mr. Clark Calloway. I'd like to reserve two minutes for rebuttal. Mr. Calloway has raised three separate and independent arguments challenging the district court's use of Section 5K2.14 to upwardly depart from the otherwise applicable sentencing guidelines range in this case. While each argument provides a standalone basis for remand, the court need not move beyond Mr. Calloway's very first argument with respect to factual impossibility, as it is the most simple and narrow basis for remand. The plain language of Section 5K2.14 authorizes upward departure where national security, public health, or safety was significantly endangered by the defendant's offense. Here, the district court misinterpreted the guideline to include circumstances such as those in this case where such endangerment was factually impossible because the weapon at issue was not in fact dangerous, but was rather an inoperable firearm put briefly into Mr. Calloway's possession before his immediate arrest as part of a carefully controlled government sting operation. What if we take the disabled AK-47 out of the picture when we're trying to decide whether to do the upward departure? We would still have his possession of the machete and we would still have all of the threats that he made on Facebook. What do we do with that? Sure, Your Honor. First of all, it's important to note that this is a guidelines departure that's key to the offense and offense conduct. Offense is defined by the guidelines and therefore his possession of the machete and the threats outside are more appropriately considered under 3553A than they are under the guidelines. They are not relevant conduct. What do you make of the guidelines reference to nature and circumstances of the offense? Circumstances of the offense. In other words, I mean, if this were, you know, Mother Teresa buying, you know, a disabled gun, I'm not sure that we would have any reason for an upward departure unless she had made the threats that your client made and had kind of demonstrated the kind of, you know, plan to use the weapons that your client. Yes, Your Honor. But though, well, Mother Teresa wouldn't be guilty of 924B in that circumstance. So looking at 924B and I really do want to key what 924B says and what the offense is to determine what the circumstances of the offense would be. It specifically says whoever with intent to commit therewith an offense punishable by, so a felony, would be guilty of this offense. So we're specifically talking about the firearm. This is a firearms offense. All the other, both the machete and I have a number of reasons why the machete shouldn't be considered alone. It considered it in conjunction. So if the court were inclined to say, which I don't believe it can in light of the fact that this is a departure based on offense conduct, that we want to look past the gun, since the gun is one of the things that the court specifically relied on, I would think there would have to be a remand to the district court to decide whether or not he would apply the departure without consideration of the gun. But in addition, so that's one thing. The offense conduct, again, is very specifically defined and this is not offense conduct, the machete or the threats. I'm sorry. I don't know. Please, Your Honor. Go ahead. I also want to say that those things do not alone bear the weight of the language here. They still did not significantly endanger the public. If the machete alone could shoulder the burden of this departure, then the government was derelict in allowing Mr. Calaway to remain at large in possession of a machete since 2016, which is when they first were aware of his possession. That's when he first started posting about his machete. I apologize for the interruption, but I do want to ask about what you just said, because to me, the machete is quite important. And I'll kind of lay out this theory and then you can tell me why I'm way off. But even if we agree with your argument that we don't look to kind of future threats, we just sort of look to the moment that the offense is taking place. One of the offenses was arranging to transport the gun across state lines. And so that offense took a little bit of time. And during that time, the facts on the ground are that your clients seem to have the motive and the means and the opportunity to commit a mass casualty event for hate crime reasons. He had pledged his fidelity to ISIS. He had called himself a mujahideen. He had repeatedly expressed a desire and intention to kill people based on their religion and based on their race. And then he was armed this whole time with a machete. And a machete can do quite a bit of damage, perhaps not as much as an AK-47. But over the course of about three months, machetes were responsible for about half a million deaths in Rwanda. They've been responsible for mass casualty events in Canada, in the United States, in South Korea. All these instances, five to ten people were killed or injured at one time just with a machete, without a gun. So if he had the motive, means, and opportunity to commit a mass casualty event while he was arranging to transport the gun across state lines, why is that not textbook upward departure in terms of being a significant danger to public safety? Your Honor, I would say that it would be a valid basis for an upward variance under 3553A. I do not, I think that, and the Third Circuit in the United States versus UCA or UCA discusses this, that the guidelines are keyed to the offense. And there's, the Sentencing Commission chose specifically to, when they formulated the guidelines, to either key them to the offense or key them to broader conduct. And there's a long discussion about this in UCA. And so the guidelines, this is a guideline departure. This is that, that all of everything that you were talking about. You keep saying it's tied to the offense, and I respect that, and I understand that. But the guideline refers to the nature and circumstances of the offense. And the circumstances here are that he had committed himself to a violent jihad. Do you agree that a violent jihad is a significant danger to public safety? I, Your Honor, I would say that, that the, that committing oneself to a violent jihad without acting upon it is, is not, does not, in the words of the, of the guideline, did not significantly endanger. The words say, the words are specific. They did not say could endanger the public safety. And I do now want to, like, I would like to move to how this guideline has been used in, in case law. Wait a second. Yes, Your Honor. I would have thought you would have added that the district court here specifically rejected the argument that he was intending to engage in mass murder. Yes, I apologize. A hundred percent that, that the, that is, the court made very clear as when the government repeatedly said that that, that was what the court found. The court specifically interrupted the, the, the government and said, that is not what I found. He found only the intent to commit what the government charged. And that's another, that's another important point, is that the government did not charge intent to, to commit a mass casualty event, intent to commit murder, intent to, to a conspiracy at anything. They, what they charged was an intent to commit an ADW, assault with a deadly weapon, which is in the, in the backdab in the middle of the heartland of what, what a firearm could be used for. So that's... Can I ask you a separate question? Or maybe it's a predicate question. Sure. I'm just trying to understand, so your argument here, which turns on the factual impossibility of, you know, because this gun had been affected in a way to make it, make it inoperable. When you, when you say that, that, that makes the 5K214 departure erroneous, are you arguing that as a matter of law, if, if the facts, whatever, whatever they are, but there's just some factual consideration that means whatever the terrible threat, however horrible it was, couldn't in fact have happened, this guideline is unavailable? Yes. Or are you arguing, I'm going to give you the three options. Okay. Okay. I think I can understand arguments that fits into any box. And so I need your expert help. So one would be sort of a law argument like that. One would be application. So we understand what the guideline is, but how it was applied here on this record, this fact, including this. So was it an application error, law error, application error, or are you disputing the factual finding that there was ever, in fact, a threat to the public? I don't know that he, I would say, I don't know that he made a, I don't know that it's a factual finding. I think that it is a legal conclusion. With respect to the factual, I mean, the guideline calls for a factual finding that there was a threat to a significant threat to safety. Is that, that's not a factual finding? I would, well, first of all, I want to, I want to answer your question and then, and make, make sure that we're, that we're talking about whether there was, whether the, the actual words of the, of the guideline, which are, was significantly endangered. And then, but, but I would say, your honor, I, that the answer is the first, the first, I believe that this is a plain language interpretive issue that the district court interpreted the guideline to, to allow for this type of conduct where, where it's factually impossible. And so this was, so if we have a law error, so this was a sting operation, but imagine it wasn't a sting operation. It's just he's buying this AK-47. And when it turns out there's unbeknownst to both the seller and him, a manufacturing defect that renders it inoperable. But he buys it thinking it's fully functional and the person sells it thinking it's fully functional. And as it turns out, the government's been watching the seller and they happen to be waiting outside and they grab him before he can take any further steps. So in that situation, you would have the same position. I would, your honor. And, and I, and that's where I do want to go to the case law here, because what you're seeing, what if instead of the firearm being inoperable, the defendant had sort of a hand disability or something that was going to make, he didn't know he thought he could operate an AK-47, but for some reason he lacks the physical ability to do so, to pull the trigger because of nerve damage in his hands or something, but doesn't know that. So the firearm is fully operable, but as it turns out, he's not factually capable of operating the firearm. Your honor. I think that, that, that, that still would not qualify here, but it would not leave the district. Even if he's walking out on the street now with this AK-47, lifts it up and then tries to pull the trigger and can't. Well, right. But you're, but yes, I don't think that that qualifies here under this, this guideline, but, but to be very clear, your honor, that is something that I'm not saying that the court couldn't consider his culpability and his intent in, in, in the 3553A factors. That analysis is, includes the history and characteristics of the defendant. Another question for me, because if I recall correctly, the district court here said and even, you know, without this, these guideline factors applying 3553 factors, I would give you this same sentence. He did not say that your honor. In fact, in fact, it's something that, that we always look for as in our office to make sure that they, whether or not the court said, said that. And he didn't, he actually said that I think a which to me shows that. He was rejecting a higher or lower sentence based on 3553 factors, 53A factors. Right. But he, which means that he keyed, he keyed his sentence to his guideline calculation, which he did, which he included included the departure. This court is. But he also says, you know, given 3553 factors, I don't think anything higher or lower is warranted. Isn't that. He didn't think that the, that there, the variance arguments were warranted in upward or. I know, but I think in saying that maybe I'm doing too much mind reading here and that's my error. It seems to me a statement, you know, at bottom that the 3553A factors leave me where I am. I'm not going to, they don't warrant something higher. They don't make it sound like this is in fact the 3553 sentence. I think, and this, this court in particular and district courts in general are very know that they are that in these circumstances. And in fact, this court earlier earlier in the proceedings specifically said to the government, why are you doing this this way? You you're opening yourself up to appeal by asking for these departures. And, and so the court understood in courts understand that. They very specifically say whether or not this guy, this particular guideline applied. And when he was doing the 3553A factors, that was after he had already made written his, his decision on, on the departures. And he was looking within that guideline range based on the variance arguments that the counselor was making that day to decide whether to go up or down. And had he had a different a different baseline by not applying this two point departure. We don't know what his analysis would be. And that is going to be a question on remand. If, if, if there's a remand in this case, he can use 30, he can use 3553, but he did not make clear that with respect to He could use 3553 to reimpose this exact same sentence. Yes, but he, but he did not make clear on the record that with or without this particular departure, he would give this the same sentence. And that's what courts in need to be clear in saying, because I do agree with you that if he had said that, that, that this would not be a basis for appeal for us. If he had said, I appreciate, I appreciate, I appreciate that. And just one more thing to understand your, your rule of law argument, does it ever change based on the nature of what's he was obtaining a nuclear bomb. And understandably, a handover as disabled. Thankfully, we would want to do that. That's we still a court could not find that his attempted acquisition and we'll have the same record of online statements. Pose just just trying to get something like this in combination with those statements, creates a threat to public safety. With this particular departure, Your Honor, I would say that it does not qualify under this departure. But please, I'm not saying that a court could not consider that information when when sentencing and when and when with respect to the whole picture in 3553 a, but this departure is specifically, this departure is, is trying to, to have to punish someone differently for the person who's sitting in their in their, in their house wanting to do something bad. And then the person who leaves their house and does something that there has to be a difference there. And that's what he did, right? He left his house, he left his house to buy this, this weapon. But I guess what you're saying is, this sentence could be a perfectly reasonable sentence, if the district court had just packed it into 3553. What is the point of this claim, then? Because, you know, it's it's a departure, but that's because it was written before the guidelines became entirely advisory. You don't really have departures at this point, all advisory. And so why isn't what he did there effectively a 3553 a analysis, we don't require them to label that. But because you don't have to justify departures, like you would have pre Booker, he was going through these facts. And he was applying, as he sort of said, at the end of the day, when I look at these 3553 a factors, I'm sitting right, I'm left right where I started on this same sentence. Your Honor, I, I think it would be reasonable to impose this same sentence under 35. Yes, I don't believe we would have a substantively unreasonable argument there. But I but I think it's important to compare this situation, even though this is an upward departure, to a situation where the court incorrectly calculates the guidelines. And the Supreme Court has said that even in those circumstances that that that is considered plain error, and that a defendant is entitled to resentencing, even if the sentence would otherwise be considered reasonable, when there is a guidelines calculation error. And the court in this case, treated this departure as essentially a guidelines as an enhancement as a guidelines as just a part of its guidelines calculation. And in fact, it actually, it actually at the when it when it gave its departure guideline range, it pronounced it told the defendant that the courts will automatically any sentence within this range will be considered reasonable by by the Court of Appeals, because it's within the guideline range. So but that's, but that's, that's an incorrect statement of law, because it's the guideline range is a pre departure guideline range. So only the pre departure guideline range is considered reasonable by the court, which is only to say that the court clearly treated this departure as if it were a part of its guidelines calculation. And had it not calculated the guidelines in this manner, we do not know where the court or how much the court would have varied, where the court would have, whether it would have varied where the court would have come out here, because this essentially put an idea in the courts find that this was an appropriate reason to depart upward. And again, but by in this instance, to two points two levels. When when courts vary, they generally don't vary in that in that manner, they'll go up a few months from the the high end of the the guideline range, or if we just don't know how the court would have handled this situation. All right. Can I just read it? Just one more sentence. How is how is it all does intent factor into the 5k 214 analysis of whether someone posed or whether there was a significant threat to safety? Your Honor, as I said, I'm sorry, it doesn't it doesn't factor into the factual impossibility argument. So because that's key to whether or not it was possible, no matter someone's intent. But I do believe that the case law, the great weight of case law shows that it is this. This departure is given when people go out and do the harm that that is that 5k 214 is aimed at. I'm trying to understand, understand that. So if we don't look factual impossibility is sort of a bright line that can't be crossed and intent can't change that, then you're asking this court to say that no matter how strong the record of intent, and no matter how much pre planning, pre staged, ready to go conduct there is for the most horrific actions that there could be, if it turns out that there is just this, this, whether even even if it's flukish explanation reason for why it can't actually happen, this guideline can't apply. I'm just trying that that may well be a correct. I'm just trying to make sure I'm thinking through consequences on both ends here. You are but Your Honor, I don't think that the court needs to be afraid of taught like this does not really tie tie the hands of a court in taking that into consideration under 3553. It would change that I think that it will change the analysis in this case because of the way the court calculated the guidelines analyze the issue. But please understand that that there's can I ask you? Sure, sure. Please take judgment. Let's hypothetical that she just asked. Yes. Except change the very end of it. And judgment. Let's hypothetical that there was some some reason that we can feel certain that the the terrible plan what it was impossible that it would happen. So I'm like a fluke. But but imagine instead that it's just as simple as the police caught him before he did it. So same all the planning, all the terrible stuff. And then the only reason doesn't happen is that the police catch him, you know, before he does it. In that instance, could there be an upward departure under this guideline? I in that instance, I mean, first of all, that's that. That is not that's not this case. So I would encourage the court to I know, I know. You're asking for a roll of you're asking but I think that and that's and I and I do think and that's why I think the government's brief is so long because like the all the other everything else is very interesting to talk about. It is difficult to line draw. I do. I do. You've been so responsive to all of our questions so far. And I'm grateful for that. But here I really do want to an answer to this question. So do so do if the if the government is sorry, if that if the if the police stopped him before he endangered public safety, then I would say that it doesn't apply. But please, Your Honor, understand that. I don't know. But you're kind of you're kind of baking in the answer to the hypothetical. You're saying if he stopped him before he endangers public safety, I'm saying he makes a terrible plan. He has every intent to do it. He has the means to do it. And the police catch him just before he's going to, let's say, commit a mass casualty event. In that situation, could there be an upward departure under this guideline? I think that the I can't think of a, a, a similar case that where the guideline has been applied in this. So I would say no, I would say no, Your Honor. And I would say but I would say that that does not under 3553. Yes. I think it's really important to know that I'm not saying that this is not allowed. Okay, please let me I'm gonna one more question. This is so much contact. We had a case this court did about a year ago. It was an enhancement in a for a child sex predator. The enhancement applied if the victim was 14 years or younger. And the defendant's argument was, well, that should not apply because here was a sting operation, there was no actual child involved. It was an FBI agent on the other end of the conversation with the defendant. And this court said, well, the enhancement still does apply. Because even though there was not literally a child 14 or under involved in this crime, the defendant, you know, basically acted as if there was. And that seems quite analogous to this case where, here's my question. If there didn't have to be a real child in order to get the enhancement for a child, why does there have to be an enabled gun in order to get the enhancement for a gun? Because I think that that the the guideline with respect to the age of the child, there's, and I have not studied that particular guideline and the Sentencing Commission's reasons for for that enhancement, but it could very well be tied more to the culpability of the defendant than it than it is to the harm to the to a child. And if it's not tied to the harm to a child, and there is no existing child, then then that makes sense. The distinction here is that the way that this guideline, and again, it's a policy statement, it's a departure guideline, is written, it says that the public safety was significantly endangered. So it's very clear that the Sentencing Commission was less involved in interested in culpability than it is in the actual effect of the defendant's conduct. So that's how I would distinguish those two cases. Thank you for your patience. Colleagues, don't have any more questions. We kept you up a little bit longer than planned. Thank you. Thank you very much, Ms. Termina. Thank you. And we'll give you some time for rebuttal. Good morning, Your Honors. May it please the Court? Catherine Kelly on behalf of the United States. Your Honors, in this case, the District Court appropriately applied Guideline 5K2.14 as a departure in this case. It was not undercut by the fact that the FBI had very reasonably disabled the K-47 and immediately arrested him after turning it over. The defense argument really forecloses the idea that you can apply this guideline departure at all, anytime the FBI does its job, whether it turns over, through a cooperator, a disabled firearm, or whether or not it turns over a fake nuclear weapon, as Your Honor had mentioned in your hypothetical. But the government position here also sort of wants to blink reality, right? And what are the limits on that? What is it that makes him, since it wasn't the gun in reality, that made him in danger, or that endangered safety? What was it? Was it his intent? It's his intent. It's his repeated statements, not only, in particular, during the time that he's actually taking part in this offense, the offense of interstate transport or causing the interstate transport of the AK-47 and ammunition. He's repeatedly telling people on Facebook and cooperators what he plans to do with this gun. And not only just the gun, he has the machete as well. Just a couple of weeks before this gun is turned over, he is on Facebook saying that he got AK-47 en route, machete on deck, that he is ready to kill anyone who isn't a Muslim in these final days. That was one of his main statements during that period of time, even after he was arrested when he was in CTF. The government didn't think that was arrestable conduct. That conduct itself, even with this machete sitting there in his apartment, was something that posed even enough of a threat to warrant arrest in its own right. It's not clear to me, Your Honor, and I have not looked deeply into this. Could he have been arrested at that point without the AK-47? I don't know that possession of machete is a federal offense. I haven't looked into that, but I don't know of any law off the top of my head that indicates that just mere possession of a machete is a federal offense. Oh, so the state, or? That's a possibility. I mean, the FBI could have tipped off. You're ranting, let's say, ranting on Facebook while lawfully armed. We'll assume that for the machete. People can get jailed for that? I think the jails would be very full. I don't think that just ranting about it with possessing a machete in your apartment would get you. So what was more than ranting here? More than ranting here is that he was trying to get this cooperator, CS-3, to sell him an AK-47 and ammunition. So it really is the AK-47. That is the main part of it. That's what I thought was going to be able to allow him to cause assault, to undertake assault with a deadly weapon, even though he already had a deadly weapon that he could assault people with. That was what was charged in count one, interstate trafficking. The district court found here, too, the basis for the enhancement was the assault intent to commit assault with a deadly weapon, not mass murder. He didn't find that. That's correct, Your Honor. So it was transporting, even though he already had expressed these views and had a deadly weapon at hand, it was arranging for the AK-47 that suddenly made him a threat to safety because then he would commit an assault with a deadly weapon? That was just the charge defense in count one, was the interstate trafficking? That's what I'm asking. That's the finding that the district court relied upon here to apply this enhancement, was that he was going to commit assault with a deadly weapon based on, in fact, the district court said he's got the machete. But he had the machete and he had the online language before anything was involved with the AK-47. And I thought you just said you didn't think there'd be any federal offense there. It wouldn't be a federal assault with a deadly weapon. But I'm just assuming here the machete at some point crossed state lines. It was purchased from a store or something. It was purchased somewhere. He didn't hand make it. So you have a deadly weapon and his threats of assault. And if that's really what the government thought the risk that was, then we don't need the AK-47 at all. I'm not sure that the government had any information as to when he obtained the machete. He had had the machete for a number of years, according to his Facebook posts. So it's not that they knew for a number of years that he had a machete and was making these assaults. And so then there's this sort of, it sounds more loaded than I mean it manufactured, but the structured transport and purchase, it's entirely a government controlled operation. There's never any, if we think the risk based on his machete and his threats and his language, it's horrible language, vile language, made him a threat to commit assault with a deadly weapon. And let's say it's a 80% chance and we'll call that enough to be significant endangerment. That 80% didn't change. Ever changed because it was the government transporting, government controlling, government disabled, the percentage never changed, right? Nothing changed with respect to the AK-47 situation, vis-a-vis the threat to the public or to the officers or to anybody. No one's safety was changed by that. Tell me how it was. Well, other than the fact that it's much easier to kill far more people very quickly without getting yourself in a hand-to-hand combat. Not with a disabled, no. Better off with a machete. The fact that it was disabled is just one factor to be looked at in this. No, no, I'm asking you, it may be the factor that's an issue in this. It is the factor that the defense is raising here. And it seems a really important one because on the one hand, the government wants to say, this was it. This AK-47 is what made him, in combination with pre-existing factors, but those alone weren't enough. This was the moment that it all changed when we knew in fact that with respect to the threat to public safety, nothing changed. There was no actual factual change in the threat to public safety. He did not have a currently operable AK-47 at that moment. Yes, we certainly concede that. Was there a currently operable one that he caused to move in interstate commerce? Not that was currently operating. So not that moment and not any moment before. So just help me understand how the threat to safety, public safety, officer safety, changed at all from what it was before. There was this baseline before with machete and the threats. How did it in fact change? That gun could have been made operable had he been allowed to hold on to it. That was never going to happen. That was never going to happen. It's still nonetheless a machine gun. Zero chance of that happening. Was there any percentile chance that he was going to be able to get away, get out of the room, take it somewhere? There's always some possibility that he could have escaped the apartment and made it operable. He had four years of serious Marine training. Okay, where is that finding by the district court? It was a fact that was discussed in numerous points. I don't think the court put in... The court made no such finding. No, the court didn't make a finding about... That wasn't any part of the district court's actual basis for imposing this enhancement. Correct? His military training or... No, that he might somehow escape and get on the way to wherever it is he needs to go and get the equipment to make this operable. That was not part of the... So what is it that the district court pointed to that took this threat to safety from that pre-existing level that wasn't enough? What was it? I don't believe that it's the pre-existing level was not enough. The court did rely extensively on... He never said that was enough by itself. He was saying... He never said that was enough by itself. Did not say it was enough by itself. He was combining the nature... We couldn't make that decision either. He maybe could argue it on remand. But I mean, this is the difficulty of this case. It's not just a factor. Is that we're supposed to find that the offense conduct, which was the acquisition of this AK-47 with the intent to commit an assault with a deadly weapon, not a mass killing. We're supposed to find that that is what so qualitatively changed the threat that he posed to safety as to warrant a significant threat to safety, as to warrant this departure. And it's just hard for me to get my mind about it if there was nothing. And it's not... We can't even sort of do the nuclear weapon. It's the nature of what he was acquiring. Because in some parts of this country, AK-47s are lawful weapons for people to possess. That doesn't make them any less lethal. Possess a nuclear weapon, right? An AK-47 is still a highly lethal weapon. It's not a matter of something where you're just getting a starter. Guns by definition are lethal. But that's not the point here. Because he did not. He happened to acquire one that was not lethal. Well, then that's creating a bright line rule that any time the FBI does its job, then you can never say that somebody has been in a situation where you're significantly endangering. We don't want the police to create sting operations that in their own, in that own conduct, significantly threaten safety. We wouldn't want that. It seems backwards to say that we want to say what the government did here significantly or created or created a significant threat to safety. But no one would ever want to say that outdoors in the real world. The police are quite careful and conscientious not to, for the public safety and presumably and hopefully for their own. It seems like we're like where I started blanking reality here. I don't think we are blanking reality. For the couple of cases that we pointed out in our brief, the Roth case and the Todd case are situations where the district court applied this guidelines departure in situations that could have endangered national security. In the Roth case in particular, the FBI was involved. What it takes to endanger national security can be very different. It takes to just the morale issues with the military, you know, theft of military equipment can be a problem. That's not what we're talking about here. My understanding about the argument here is that it was this AK-47s purchase that changed everything because of the, he was acquiring this weapon. And it's not just other arguments. It's not just the purchases. What he was saying he was going to do with the gun all along. And even when he was in CTF, he was telling W7 what he had planned to do. He was disappointed that he was shut down so quickly because his goal had been, as he was saying, to buy. I understand that what he said, I get that. It's stipulated. We have that and we have the machete beforehand. What I'm struggling with is, in fact, in reality, his ability to undertake that harm did not change for a second. Only because the FBI did its job. No, we stopped that. Thank the very question here. Because the FBI did its job, absolutely. The FBI did its job to keep the public safe. To engage in its difficult investigatory measures in a way that still protects public safety. So when you say only because the FBI did its job, let's substitute in, only because public safety was preserved and unaffected. That's what you mean by that. It's a situation, too, where we also have a defendant who was not trying to buy. He fully believed that he was not trying to buy a deceitful firearm. He fully believed that he was buying a gun that was capable of firing. His intent is very important here. Is his intent alone what changes this to a public safety risk? I think his intent is very, very important. No, no. I'm going to ask again. We write an opinion that says his intent alone. His intent alone, which he had all along with a machete hanging in his apartment. His intent alone changed it. I think you could because based on his statements. No, but the district court did rely very heavily on his statements. Yes. And what his plans were. So if he had the intent, it's also someone who was really, really, this is hypothetical to be clear, really, really stupid and confused. So not someone with military background and thought if I just had a sharp pair of scissors, I could kill many, many people. I could kill the police officers or the non-Muslims. And that is my intent. And I'm going to acquire a sharp pair of scissors. And the FBI hands him kindergarten dull scissors. Is the threat to public safety changed because of his intent? He thinks he's got it now. But actually, it's those dull scissors that can't hurt anybody. I don't think so in that situation because, of course, the sharp pair of scissors is so, and the dull slash disabled gun. The disabled gun can be made operable and it could easily kill many, many people, particularly when it's been turned over. You can sharpen metal, you can sharpen those. Again, that's something that takes an awful lot of hand-to-hand combat with somebody as opposed to just walking into a police station like he intended. Okay, so I know you want to keep making that argument, which the district court rejected. I would like to rely on what the district court found here, these arguments. And he didn't even agree to that in his plea. He didn't have any recollection of this thing about police stations. The government, that was cleared up. Walking anywhere with that AK-47. I just want to make clear that he did not recall the time of his plea. His belief at that time was that he didn't make that statement. The defense counsel later agreed that he did make that statement. It was included in the statements that he had made to cooperators and Facebook and on Facebook. I can't remember if it was a statement to CS3 or what. The district court find it? The district court had asked after the plea what statements should be considered. In particular, since he had made the statement at the plea that he didn't recall saying anything about going into a police station. But defense counsel later agreed, it's page A230 of the record, that agreed to the accuracy of the defendant's Facebook posts and his statements attributed to him when he was being secretly reported by the confidential. And even having a district court just said, I'm not relying on that. All the district court said was he intended to commit assault with a deadly weapon. And that's what was charged. The district court said that it was the government's. You had to have an offense for purposes, you know, for 924. Yes. But the district court also pointed to and only to his intent to use the AK-47 to commit assault with a deadly weapon as the basis for the enhancement. That's correct. But you can certainly assault more than one person with a deadly weapon. The only thing the district court was really saying. And you did saying it's for our purposes, we rely on what the district. Right, right. But the district court certainly did not say that there was. That it was finding that multiple people would not be killed in this situation. It was just saying the government gloss on the facts was. And it's not a gloss out of nowhere. It's based on what his statements are, that he wants to kill white people. He wants to kill police officers. He wants to kill anybody who isn't Muslim. So we're not talking about. No one's disputing those statements. Right. Which are all made with. All of that supports that it's not just an ADW where you go and find one person. And you point the gun at them. He is saying, I want to kill and I want to kill people. Large, you know, a whole variety. I just I don't really just regard opinion maybe the same way that you do. I mean, I understand those arguments were there and those statements were there. They're terrible statements. And they were made at the time he had a machete, which Judge Walker has pointed out itself. Could have been used all along to commit many people to injure or kill multiple people. So I'm trying to get focus as the guideline requires us on that. The offense at issue here, the 924 acquisition and how that changed anything. But I've monopolized your time too much. Can I ask you something, though? He has been released, right? He's no longer in prison. He's on supervised release as of April 21st. OK, but there's no mootness argument because this could affect supervised release. Exactly right. You, you. Well, let me read this sentence, and I guess my question is, is this a should we treat this as a factual finding? Should we treat this as a legal conclusion? What do we do with this sentence? I believe it is a factual find. No, no, I haven't told you the sentence yet. I just haven't told you the sentence yet. I'm sorry. This is on JA-296. And I'm sorry, which, which statement on JA-296? So it's in the middle of the page. It says the dangerous nature of the defendant at the time of the offense, being armed with multiple weapons that he intended to use in carrying out an attack, created a serious risk that multiple individuals could have been killed or injured. That, uh, should we think of that as not a factual finding? Should we think what? I believe it's a factual finding, and if it was any more than a factual finding, what the court is doing is applying the facts to the guidelines. In response to Judge Millett's questions that the court did not find a risk of a mass casualty event. It looks like here the court's saying the defendant created a serious risk that multiple individuals could have been killed or injured. That's correct. The court did say this. And my recollection of the court's statement about mass casualty was at the later sentencing hearing, and the government was saying that he was essentially going to have created mass casualty situation, and the court was simply finding or stating that it had not made that specific finding in this July 27th decision. Let me, let me ask you. But I mean, mass casualty was not specific, but the court is saying that he's talking in this decision that he is saying that it created a serious risk. The guideline is phrased in a way that I find a little bit less precise than I wish, and in part it's that it's in the passive voice, at least part of it. So let me pull it up. You give me one second. If national security, public health, or safety was significantly endangered, is it supposed to be if safety was significantly endangered by the nature and circumstances of the offense? Is that, I guess, significantly endangered by what? What are we supposed to look to the defendant himself? Like, how dangerous was he as a person? The offense itself, it says nature and circumstances of the offense. So, right. I believe it's the offense. Other courts have looked at not just the offense, but the offense, not even the nature and circumstances doing there. It can be both. The nature and circumstances of the offense would include who this defendant is, how he's acting, what his statements have been, and so forth. Other cases in other circuits have looked at not just the offense itself. There are some cases from the 1990s where courts looked at what the defendant's prior criminal history was in determining what his endangerment to the public would be if he's let out. I believe the Joan case and... Go ahead. Sorry. Sorry. The Joan case, I believe the Brown case from the 11th Circuit, both looked at the nature of the defendant's whole history. Okay. And then, hopefully, very quickly, the finding that this guideline applies, does that get... Is that an application of law to fact? Is that a due difference? I believe so, yes, Your Honor. It is due difference. And there isn't any point in which the district court in its decision is going through any sort of legal analysis of what the specific words of the guideline means. We don't think this is a de novo legal review. And given the full facts of the case and everything the defendant has said about his intent and what he planned to do with that AK-47, believing that he was buying one that was going to work along with live ammunition, we believe that the court properly applied this enhancement in this case. Can I ask you what... There's more of the guideline I don't understand as well. What does time of the offense mean? We believe in this situation, the time of the offense is the whole time that he is causing the transport of the gun across state lines. So here you have him on 31st of March, sitting down watching an ISIS documentary with CS3 and saying that he wants an AK-47, and he's paying for it in two installments through April, and then he gets it on the 4th of May. So we believe that the entire combination... Any point in that time frame, and that makes sense to me. There was any point in that time frame when he was, in fact, in simultaneous possession of the machete and the AK-47? Only on the 4th, when the CS3 handed him the gun. He wasn't in possession of it. It was, what, a few floors away in the building. They were in the same building. In the same building. That counts as in possession. The district court said he was in possession of multiple weapons. That counts as in possession? I'm asking you the matter of fact. Is there some case you can help me to understand that... Not off the top of my head, but it's in his apartment. His apartment was a block away? Would he still be in possession of multiple weapons at the time he acquired the AK-47? That would be a more difficult case, but since they're right in the same apartment building, same apartment building, but if it's 10 floors between it, you have to go to the elevator. I'm just trying to understand this concept of possession. If it's in the same building, no matter how big the building, in the Pentagon, which is an incredibly big place, right? That wouldn't be possession of something if you're on one corner and something else is in the other corner? It's a broader concept than while armed, so it's not like it has to be immediately at your side. I've seen plenty of cases where it's in the next room, it's in the car, and you're standing next to the car. I'm just not aware of one where it is in an entirely different premises that is... It's in a different unit of the apartment building. Excuse me? It's in a different unit of the apartment building. And different floor, three floors, I think it was three floors away? It wasn't like it was across the hall, right? I can see your argument about across the hall, but it wasn't even the same floor, it was three floors away. I don't know. Counsel has indicated that it was across the hall to me. I'm sorry? Counsel has indicated that it was across the hall. Is that right? I don't know off the top of my head, Your Honor. I don't want to admit to that, but he certainly had it at the same time, and he did possess it. So for all those reasons, we request that you affirm the attachment to the district court. Thank you. We kept you up too long, too. Thank you. Okay, Mr. Armino, we'll give you two minutes for rebuttal. Oh, you're muted. Oh, you're muted. I apologize. I just have three quick points following up on what was just discussed. What the court said was not that he possessed multiple weapons at the time. He said he was armed with multiple weapons, and I think that the government counsel just conceded that being armed is different even than constructive possession or possession. The court's words were that he was armed with multiple weapons, and even if I had a gun in my house and walked out of the house and was shot by the police, they would have shot an unarmed individual. And so he was not armed with a machete at the time that he was armed with the AK-47, for one. Was his apartment across the hall? That is not in the record, Your Honor. I don't believe that the apartment was across the hall. I do believe, I also have a recollection, and I apologize, I can't point to it in the record at this point, that it was on a different floor. But in any event, I am fairly positive that there is nothing in the record that the apartment was across the hall. With respect to this distinction, well, very simply, I don't believe that this is an application of law to fact. It is a plain language interpretation of what the words was significantly endangered mean. And so I believe that him applying this factually impossible, circumstance is evidence of a misinterpretation of the guidelines. So that's how I would frame that issue. And just to be clear, I promise I'll let you make your final point. And your position is that for this rule of law that was significantly endangered is an objective factual inquiry that does not turn in any way on the defendant's subjective intent, or does subjective intent factor in? That's where I was going next, Your Honor. I apologize. I think the court has seen, and understandably has struggled with, what do we do with intent? Well, what we do with intent is enhance his guideline calculation by four points for specifically his intent. And that happened in this case. So what 5K2.14 is aimed at is not intent. It is action that significantly endangered the public safety. These are two different things. And so this departure is to differentiate between the people who have the intent to do some bad and don't do it, and the people who intend to do something bad and do. And that's what this departure is for. And so that is where intent does come into play. It comes into play for the four-point enhancement within the guideline. And it can also be enhanced with respect to 3553. But the intent is not being unaccounted for. If there's nothing further, Your Honor. Yes, I have a question. You make much of the gun having been disabled. Yes. Would you be making the same argument about its irrelevance as a weapon, about its not being a threat to anyone, if the gun were simply unloaded? If it were unloaded in the context of this... Everything else is the same, right? It's just the gun is unloaded. I would be. So why do you think anyone would bother disabling the gun? To be extra careful, Your Honor. I mean, we're talking about... Careful because there's a risk. ...significantly in danger, right? There is a continuum here. And so I think the disabling... I think the significant endangerment could be... I think could be met by endangering the officers involved in the arrest. But they're not endangered with a disabled weapon or one that is unloaded, with no access to ammunition, assuming that there's no access to... Like immediate access to ammunition. Thank you. Thank you very much to both counsel. The case is submitted. Thank you.
judges: Millett, Walker, Ginsburg